KILLION *v.* CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD CO. ET AL.

[No. 15,983.   Filed   March   4,   1940.]

*Clarence R. Martin,* and *Curtis C. Hendren,* for appellant.

*Bert Beasley,* and *Moffett & Moomaw,* for appellees.

CURTIS, J.—This was an action for damages for personal injuries resulting from the collision of an automobile, in which the appellant was riding, with appellees' freight train at the grade crossing of State Road 67 and the appellee railroad near Beehunter, Greene County, Indiana on May 22, 1931.

The complaint among other things alleges that the appellant and her husband and a Mr. and Mrs. Emmett B. Lucas were returning to their homes in Plainville and Sanborn in Mr. Killion's automobile, from a dance in Linton, Indiana sometime after midnight on the night in question; that they were driving on State Road 67; that the night was dark and the weather was damp, foggy and rainy and the visibility poor; that the highway upon which they were driving has a slight upward grade as it approaches the said railroad crossing and that by reason of such grade the light from the automobile head lights did not reach as far as they would reach on level ground or on a clear night and that the rays of light of said automobile head lights as they reached the crossing extended under and beyond the train of cars before they disclosed the form of the car itself which was standing across the roadway and that said freight car was dark in color and difficult to see at night; that the appellant and the driver of said automobile had traveled over said road occasionally but were not familiar with and were unaware that they were at the time approaching any railroad crossing; that the said automobile as it approached the point on said highway which crossed said railroad track was under proper control and was being operated in a careful and reasonable manner at a speed of approximately 30 miles per hour; that the front lights

of said automobile were sufficient to throw a light ahead so as to make any person or object visible for a distance of two hundred feet and were at the time properly adjusted; that at a point about five or six hundred feet southeast of the crossing in question the defendants' railroad crosses, at grade, a line of railway of the Pennsylvania Railroad Company and that all trains approaching said railroad crossing are required to stop and that at said place switch tracks are maintained for the purpose of transferring freight cars from one line of railroad to the other; that on the night in question the defendants in operating a freight train on their tracks stopped the same just before reaching said railroad crossing and left it standing "for a considerable period of time, the exact duration of which plaintiff is unable to state, during which time the train crew was engaged in switching or in other duties, and said train while so stopped and standing extended back, over and across the intersection of the railroad and said highway number 67 and that said freight car was so standing and was blocking and obstructing said crossing as the plaintiff approached the same in the automobile driven by said Vernon R. Killion"; that said defendant railroad company did not maintain a crossing sign of the cross-arm type required by law, "on that side of the railroad crossing from which this plaintiff approached"; that the only sign at or near the crossing was one appearing on a circular disk twenty-four inches in diameter and located at the side of the road some distance from the pavement and about two hundred seventy-five feet from the crossing and that it "was wholly inadequate and ineffective to warn travellers of said crossing at night because it could not be seen at night and that neither the plaintiff nor the driver of the

automobile saw the same''; that from the highway as it approached the crossing in question, the view of the station building at Beehunter, and of any engine or train standing at said crossing or at any point south of the highway is completely obscured by an almost continuous row of buildings east of said track, consisting of two residence houses and seven or eight barns, stables, chicken houses and outbuildings''.

We now quote certain other portions of the appellant's complaint, setting out specific charges of negligence as follows:

"Plaintiff says that as soon as she and the driver of the automobile discovered that defendants' train was standing upon and blocking their passage over said railroad crossing, the driver shut off the power, applied the brakes and attempted to stop the automobile, and that as the driver applied the brakes he tried to turn the car to the left and run southeastwardly alongside the railroad tracks, but said obstruction was so close that it was impossible to stop or to prevent the collision; that the automobile struck the train on defendants track with great force and by reason thereof said automobile was wrecked and demolished and all the occupants thereof including this plaintiff were seriously shocked, wounded, maimed and injured, all of them were rendered unconscious, and Emmett B. Lucas was killed.

"The plaintiff alleges that the defendants were guilty of negligence and of unlawful acts and omissions which proximately caused said collision; and that as a direct consequence and by reason of each of the several negligent and unlawful acts and omissions hereinafter alleged, said collision and the injuries to this plaintiff, which are hereinafter described, resulted:

"(a) Plaintiff says that the defendant, rail road company and the defendants, Dowling,

Perry, Effinger, Hill and Armstrong, in charge
of said railroad train, which was carrying or
was used for carrying freight, did, negligently,
wrongfully and in violation of the law of the state
of Indiana, permit and suffer said train and the
cars composing the same to remain standing
across the said public highway state road number
67, and that said defendants and each of them neg-
ligently, wrongfully and in violation of the said
law of the state of Indiana, failed and neglected to
cut and separate said cars and to leave a space of
sixty feet across such public highway and did
unlawfully, wrongfully and unnecessarily block
and obstruct such public highway; that the
plaintiff and the driver of the automobile exer-
cised due and reasonable care in the operation
thereof but because of the facts hereinbefore al-
leged they could not avoid said collision; that if
the defendants had complied with the provisions
of the law and had left a space of sixty feet
across such highway the collision could not and
would not have occurred and that such negli-
gent, unlawful and wrongful act or omission was
the direct and proximate cause of the collision.

"(b) Plaintiff alleges that there were no
street lights or railway lights at or near the
crossing of said railroad with state highway No.
67, at the time plaintiff approached said cross-
ing at night, nor was there any other light or
sign visible at night to warn travelers on said
highway or to warn this plaintiff and the driver
of said automobile that they were approaching
a railroad crossing; that defendants' train was
composed of more than thirty-six cars, the nine-
teenth car was stopped directly above the cen-
ter of the highway and on none of said cars was
any light displayed; that the defendants, Dowl-
ing, Perry, Effinger, Hill and Armstrong, in
charge of said railroad train, and that the de-
fendant railroad company by its said employees,
knew of the topographical and physical condi-
tion surrounding said crossing which have here-
inbefore been alleged; and said defendants knew

of the damp condition of the weather and the poor visibility at the time and place; and plaintiff further alleges that said defendants, at the time said railroad train was stopped upon and across said highway No. 67 and during the time said train was standing over and upon said crossing up until the occurrence of the collision herein described, wholly and negligently failed to light or display any flare, lantern, light or other visible signal and plaintiff says that defendants act of stopping said train without lights upon and across said highway crossing and allowing it to remain standing thereon in the night time when it was dark, damp and foggy was wrongful and negligent and was deceptive, perilous and hazardous to travelers upon the highway and to this plaintiff and to the driver of said automobile; that the plaintiff and the driver of the automobile exercised due and reasonable care but because of the facts hereinbefore alleged they could not avoid said collision, and that the negligent and wrongful failure of said defendants to display a flare, lantern or some other form of warning light so that this plaintiff and the driver of the car in which she was riding might know said train was obstructing the railroad crossing, was the direct and proximate cause of the collision.

"(c) Plaintiff further alleges that said railroad at the place of collision crosses one of the principal arterial highways of the state, to wit: state highway No. 67, which is the main highway route from the city of Vincennes to the cities of Indianapolis, Anderson, and Muncie; and that by reason of the facts hereinbefore alleged, especially the facts regarding the group of buildings on the east side of defendants railroad track and south of said highway, said crossing is particularly and unusually perilous and hazardous, especially when it is dark, at night and when the weather is damp and foggy.

"Plaintiff further alleges that there is in common use by railroad well known and well recognized automatic and mechanical devices of electric or automatic operation in the nature of flash signals, electric bells and gates, which signals warn travelers at night when crossings are obstructed by trains or when trains are upon, or about to come upon, such highway crossings; that an automatic electric flashing or other signal could have been installed and operated without unnecessary expense by the defendant railroad company at the crossing herein described; that if such a signal had been maintained plaintiff and the driver of said automobile could and would have become aware of the danger in time to have avoided the collision; that the plaintiff and the driver of the automobile exercised due and reasonable care but because of the facts hereinbefore alleged they could not avoid the collision and that the act of said defendants in stopping and placing and maintaining said train at a standstill across said highway without displaying any flare, light or lantern, when the said crossing was not protected by any flashing signal device or any other automatic light or warning signal, was negligent and wrongful and was the direct and proximate cause of said collision."

There is a detailed statement in the complaint as to the injuries, followed by a prayer for damages in the sum of forty thousand dollars ($40,000.00).

To the appellant's complaint the appellees first addressed a motion to strike out one of the grammatical paragraphs which was sustained. No error is presented for review on this ruling of the court and we therefore give it no further consideration.

After said ruling the appellees filed their several demurrers to the appellant's complaint as it stood after said matter had been stricken out. Said demurrer is in the following words:

"Each defendant severally demurs to the complaint herein and for cause of demurrer severally says said complaint fails to state facts sufficient to constitute a cause of action against him".

"MEMORANDUM

"The defendants severally file with this demurrer and make part thereof the following memorandum of reasons setting forth wherein the complaint is insufficient as to each defendant severally considered:

"(1) The complaint affirmatively shows no negligent act or omission of either or all defendants was the proximate cause of the collision and resulting injuries.

"(2) It affirmatively appears from the averments of the complaint that the proximate cause of the collision was the driving of the automobile into the side of the nineteenth car of a freight train already occupying the highway crossing in question.

"(3) It affirmatively appears from the averments of the complaint that the presence of the train on the highway crossing was only a condition and was not the proximate cause of the collision.

"(4) There is no sufficient averment of facts to show any negligence on the part of the defendants or of any of them, which was the proximate cause of the alleged collision and resulting injuries."

These demurrers were sustained with an exception to the appellant. Upon the refusal of the appellant to plead further the court rendered judgment that the appellant take nothing by her complaint and for the costs of the action. It is from that judgment that this appeal was prosecuted. The error assigned and presented in this court is alleged

error as to said rulings on the demurrers and in rendering the said judgment.

A general examination of the complaint shows that there are certain charges of statutory negligence coupled with certain charges of common law negligence. Of the statutory type are the charges concerning the blocking of the highway by the freight train and the failure to cut the train so as to make an open crossing for the travelling public on the highway in question. Some basis is also attempted to be laid to show statutory negligence in the alleged failure to have a cross-arm type warning signal "on that side of the railroad crossing from which this plaintiff approached" and having an "inadequate and ineffective" circular disk sign.

The complaint alleges that the railroad did not maintain a crossing sign of the cross-arm type required by law "on that side of the railroad crossing from which this plaintiff approached".

It is to be noted that §55-2001 of Burns 1933, §14562 Baldwin's 1934, does not provide that the cross-arm type of crossing sign shall be placed on each side of a simple crossing. It provides that such a warning sign shall be placed as nearly as possible at right angles with the highway "at each grade crossing of its railroad with any public highway". Even if it should be considered to be controlling there is no allegation that there was no such warning sign at the crossing in question unless it would be inferred from the statement concerning the metal disk sign that the only sign at or near the crossing was one appearing on a circular disk located about two hundred seventy-five feet from the crossing and that it "was wholly inadequate and ineffective to warn travellers of said crossing at night because it could not be seen at night and that neither the plain-

tiff nor the driver of the automobile saw the same''. The disk described was substantially as required by §§55-2003 et seq. Burns 1933 as amended by chapter 234, p. 1230, Acts 1935. There is no allegation that the public service commission of this state ever made any finding that the particular crossing in question was an extra hazardous crossing or ever made any order to that effect requiring additional warning signals. As bearing upon an attempt to allege that the crossing was extra hazardous, requiring additional warning signals the complaint alleges that the highway as it approached the crossing had a slight up grade the amount of which is not stated and that by reason thereof the automobile headlights did not sufficiently show the box car standing across the highway and also that from the highway as it approached the crossing, the view of the station building at Beehunter which was some 500 or 600 feet to the side of the crossing was completely obscured by an almost continuous row of buildings consisting of two residences and some seven or eight barns, stables, chicken houses and outbuildings. As attempting to plead other common law acts of negligence it is noted that the complaint, in substance, says that the appellants were negligent in not displaying a flare, lantern or some other form of crossing light as a warning that the train was obstructing the said crossing and were also negligent in not having an electric or automatic mechanical device in the nature of bells and flash signals to warn travelers at night when the crossing was obstructed and in not displaying flares and lights on the train when standing over the highway when not protected by any such automatic devices.

The appellant in her brief has, with much precision, stated the substance of her charges of negli-

gence as follows: "Blocking crossing and failure to cut train," "Failure to display flare or signal light" and "Maintaining train over crossing without displaying flare or lantern, when crossing was not protected by an automatic flashing signal." The contention of the appellant is that these alleged negligent acts were the direct and proximate cause of the collision and injuries.

We have read and studied the complaint herein and tested it by the demurrer addressed to it. In our opinion it fails to state a cause of action and the demurrer to it was correctly sustained. Almost every phase of the instant case has recently been written upon in cases nearly parallel. See, *Pennsylvania R. R. Co.* v. *Huss* (1933), 96 Ind. App. 71, 180 N. E. 919; *Cleveland C. C. & St. L. R. R. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708; *Morley* v. *Cleveland, C. C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 194 N. E. 806; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. (2d) 714; *New York Central R. Co.* v. *Nathan Gardner* (1939), ante 366, 24 N. E. (2d) 811.

Upon one phase of this case and as applicable to it we quote from the Casey case, supra, as follows: "Counsel for appellee argue that, because many automobiles do run against the sides of trains upon crossings, railroads are bound to anticipate such an occurrence, and equip the sides of their cars with reflectors as an additional warning. It would logically follow that, when reckless or negligent drivers collide with the sides of cars equipped with reflectors, other and additional warnings would be insisted upon. It may be true that many automobiles are driven into the sides of trains, but it has yet to be demonstrated that automobiles driven in a reasonably prudent manner are driven into the sides of

trains upon crossings, and that such conduct is so usual and probable as to be reasonably anticipated. The motorist, as well as the railroad company, is required to use reasonable care. The responsibility of one is not greater than that of the other. Railroads are not insurers of the safety of motorists approaching their tracks.''

The complaint indulges in some characterizations and epithets such as ''perilous and hazardous'' and ''extra hazardous'' and ''inadequate and ineffective''. These being mere conclusions of law and not conclusions of fact are not covered by the statute which authorizes the pleading of conclusions of fact subject only to a motion to make more specific. See §2-1005 Burns 1933; *Stuck* v. *Town of Beech Grove* (1929), 201 Ind. 78, 166 N.E. 153. They add nothing to the allegations of fact required in a complaint.

The highway in the instant case in so far as we are informed from the complaint was straight with only a slight upgrade toward the crossing. There were no obstructions of any kind to the vision ahead. The freight car was standing directly across the road on the track. It was alleged to be of a dark color and the night to be rainy, misty and foggy. The automobile in one part of the complaint was alleged to have been under control and travelling at a speed not greater than 30 miles per hour, with head lights showing the road not less than 200 feet ahead. At another place in the complaint it is alleged that when the automobile struck the freight car it was demolished. The fact never the less remains that with the freight car directly occupying the crossing and standing entirely across the highway and with the vision in front totally unobstructed the automobile

was driven into the side of the freight car resulting in the injuries complained of. These facts stand out in the complaint.

We do not feel called upon to lengthen this opinion by a detailed review of the above cases. It is sufficient to say that in view of their pronouncements, the complaint in the instant case fails to state a cause of action and the demurrer was correctly sustained. The alleged acts of negligence are shown upon the face of the complaint not to have been the proximate cause of the collision and injury.

Judgment affirmed.

Bridwell, P. J., not participating.