B & O Railroad Co. *v.* Robbie Sue Brown.

[No. 172A6. Filed December 27, 1972.]

*J. Lee McNeely, Matchett & McNeeley,* of Shelbyville, *Karl F. Walker, Rolfes, Garvey & Walker,* of counsel, of Greensburg, for appellant.

*Harold V. Jones, Jr., Thompson & Jones,* of Columbus, *Wickens, Wickens & Wilke,* of counsel, of Greensburg, for appellee.

Lowdermilk, J.—This cause of action was tried on plaintiff-appellee's second amended complaint for personal injuries. In said amended complaint she charges the defendant-appel-

lant railroad company (hereinafter referred to as "Railroad") with certain acts of common law negligence and certain acts of negligence which were charges of the Railroad's violation of the safety statutes.

Before the jury was instructed Railroad filed motions to withdraw from the jury's consideration rhetorical paragraphs 9(a) and 9(b) of the second amended complaint and a motion to admonish plaintiff's counsel.

Said rhetorical paragraphs 9(a) and 9(b) are in the words and figures as follows, to-wit:

"(a)   That the defendant carelessly and negligently failed to have installed and maintained at a grade crossing of its railroad with said public highway, highway crossing signs at right angles with the highway, on a post, with a board of wood or metal not closer to the ground than seven (7) feet on this post, with the word 'Danger' in red or black letters and two (2) other boards diagonally across each other just above the board on which the word 'Danger' is printed, with the word 'Railroad' appearing on one board and on the other the word 'Crossing.'

"(b)   That the defendant carelessly and negligently failed to have installed and maintained on the right hand of persons approaching said railroad crossing, a Railroad Crossing 'Danger' sign, securely set in concrete within the highway, at a distance of three hundred (300) feet in either direction from the point of intersection of the highway and the railroad, and as near to the edge of the traveled part thereof as may be safest and most convenient to the traveling public, at a height above the surface of the highway as to be seen to the best advantage by the reflection of the ordinary lights used on automobiles approaching said crossing."

The court overruled the motion to admonish counsel and sustained the motion to withdraw the issues from the jury's consideration only as to "maintenance."

The court instructed the jury, Final Instructions 9 through 28, and the parties' written objections to part of these instructions were made.

The jury concluded the case by returning a verdict for the plaintiff-appellee.

The defendant Railroad timely filed its motion to correct errors, which motion was overruled.

The evidence in this case is that at the time and place in question, the B & O Railroad tracks crossed Fourth Street in the City of Seymour, Indiana, at right angles with Fourth Street running north and south and the railroad running east and west. The approach to the tracks is upgraded about four feet above the level portion of Fourth Street as it approaches the tracks. There are three separate sets of tracks intersecting Fourth Street. The parties admitted in oral argument there was only one main line and there were two sidetracks. At the southeast quadrant of the intersection, the Railroad has erected a sign on which there appears the word "Danger" in black letters; two other boards are placed diagonally across each other just above the board on which the word "Danger" is printed and on one of the boards the word "Railroad" appears and on the other the word "Crossing" appears. There was no board at the top of the diagonal boards on which appeared the word "Two." The plaintiff's exhibit number 8 clearly shows this sign, which appears to be the standard and ordinary sign used at such railroad crossings and which sign shall hereinafter be referred to as "crossbuck." There was also a round sign showing a crossing at right angles with the top of the same displaying an "R" on each of the top quarters of said sign. About a foot beneath the round sign was a rectangular sign marked "Railroad Crossing." (Plaintiff's exhibit 9.) This sign shall be hereinafter referred to as the "warning sign."

There was further evidence by the project engineer of the Railroad that the warning sign was 305 feet north of the railroad tracks.

The engineer on the train testified that he had been stopped

three or four minutes when the collision occurred. However, the conductor testified that after the train pulled onto the Fourth Street crossing and stopped, he saw a car coming down Fourth Street at a fast speed and then heard the crash. He then testified that he and the flagman had been ready to go to the crossing to cut the train.

The flagman described the freight car that was struck as being a tank car and black in color and had the number of the car painted on it; there were no lights on it, and he thought there were no lights at the intersection. There were no fusees, flares, or lanterns and the only warning he knew of was the crossbuck.

Maybelle Sutherland Estes was the driver of the automobile which ran under the train. Her evidence was similar to that of the plaintiff-appellee, as to the accident.

Plaintiff-appellee Robbie Sue Brown testified she was injured; she was not familiar with the roads and how to get out of Seymour to go home.

Plaintiff's exhibit 17 shows a Chevrolet automobile under a tank car with the left front wheel on the wood portion of the crossing and not yet on the first rail of the track. About half of the right side of the hood is under the tank car with damage to the right side of the windshield.

In the argument section of Railroad's brief, Railroad relies on specification 5 of its motion to correct errors, sub-sections (a) and (b) which charges are uncorrected error of law occurring subsequent to the trial as follows:

"(a) The Court erred in overruling defendant's motion to withdraw from the jury's consideration the issue of negligence set forth in rhetorical paragraph 9(a) of plaintiff's second amended complaint for damages, . . ."
and

"(b) The Court erred in overruling defendant's motion to withdraw from the jury's consideration the issue of negligence set forth in rhetorical paragraph 9(b) of plaintiff's second amended complaint for damages, . . ."

(Rhetorical paragraphs 9(a) and 9(b) are hereinbefore set out verbatim.)

Appellant Railroad tendered Instructions number 1 and 2, which are the same as heretofore set out in specification 5 of the motion to correct errors and to which is added to specifications (a) and (b) the following words:

"You are instructed that the plaintiff has failed to introduce evidence, which if believed, would prove actionable negligence on the part of the defendant, B & O Railroad Company, in this regard, and therefore, such charge of negligence is withdrawn from your consideration and you should disregard the same in your deliberation."

In the motion to correct errors appellant Railroad assigned under specification 5(g) that the court erred in refusing to give to the jury defendant's Tendered Instructions 1, 2, 3, 4, 8, and 10. Tendered Instructions 1 and 2 are hereinabove set out.

In specification 5(f) of the motion to correct errors appellant Railroad charges the court erred in giving, over proper objection of the defendant, Instructions 9, 10, 11, 12, 13, 20, and 28. We shall discuss only Instructions 9 and 11.

The court's Final Instruction 9 is in the words and figures as follows, to-wit:

## "COURT'S FINAL INSTRUCTION NO. 9

"There was at the time of the accident in controversy, a Statute of the State of Indiana in full force and effect providing that:

" 'In addition to the highway crossing signs which steam and interurban railroad companies are now required by law to install and maintain at grade crossings on public highways in this state, additional uniform danger signs shall likewise be installed and maintained at all such grade crossings in the manner hereinafter prescribed in this act.'
"and
" 'All such additional danger signs shall be uniform in appearance, character, size, material, color and lettering throughout the state, shall be installed at each grade cross-

ing in this state at a distance of 300 feet in either direction from the point of intersection of the highway and the steam or interurban railroad, and on the right hand of persons approaching such railroad crossing, shall be securely set in concrete, within the highway, and as near to the edge of the traveled part thereof as may be safest and most convenient to the traveling public, and shall be erected at such height above the surface of the highway as to be seen to the best advantage by the reflection of the ordinary lights used on automobiles approaching the crossing.'

"and

" 'And all danger signs contemplated in this act shall be kept in repair by the board of commissioners of the county in which they are installed. As additional danger signs and posts are needed to replace such as are no longer serviceable, or to install at grade crossing established after the passage of this act, such signs and posts shall be ordered by the public service commission and delivered to the point where they are needed by the railroad affected, as provided for in sections four and five of this act.'

"If you find from this evidence that at the time and place of the accident in controversy the defendant railroad violated the above quoted statutes, I instruct you that such violation would constitute a presumption that the railroad was negligent. Such a presumption is rebutted if the evidence shows that it did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances, who desired to comply with the law."

Railroad's objection to said Final Instruction 9 is as follows:

### "DEFENDANT'S OBJECTION TO COURT'S FINAL INSTRUCTION NO. 9

"The B & O Railroad Company objects to Court's Instruction No. 9 for the reason that there was no evidence in effect, introduced in this cause, to the effect, that the B & O Railroad at any time failed to install any additional danger signs at a distance of 300 feet from the crossing. That absent some evidentiary indication of a violation of a Statute, that the Statute should not be included in the Court's instruction and read to the jury."

The court's Final Instruction No. 11 is in the words and figures as follows, to-wit:

## "COURT'S FINAL INSTRUCTION NO. 11

"There was at the time of the accident in controversy a Statute of the State of Indiana in full force and effect providing that:

" 'It shall be unlawful for any person, firm or corporation, or the lessee or receiver of any person, firm or corporation, who shall own or operate any line of steam or interurban railroad in this state to run trains on the same without installing and maintaining at each grade crossing of its railroad with any public highway, highway crossing signs; to be placed at right angles with the highway, where possible, and the construction of the same and warning notice to be as follows: A substantial upright post, 13 feet or more in length, three and one-half feet of which shall be in the ground; a board of wood or metal to be placed not closer to the ground than seven feet on this post, at right angles with the post, on which shall appear the word "Danger" in red or black letters, two other boards to be placed diagonally across each other just above the board on which the word "Danger" is printed, and on one of the two boards the word "Railroad" shall appear, and on the other the word "Crossing". Where two railroads are crossed by the highway, parallel with each other, a board shall be placed at the top of the diagonal boards on which shall appear the word "Two", the boards on which the word "Danger" is written shall be at least four feet in length; the boards on which the words "Railroad Crossing" is written shall not be less than five feet in length, and where there are two railroads to be crossed, the board with the word "Two" on it shall not be less than two feet in length; the size of all letters on the signs shall not be less than six inches high; provided, that the crossing signs of carriers in this state heretofore approved by the railroad commission (public service commission) may remain and be taken as a compliance with the terms of this act; and provided, further, that any other sign than the type described above may be constructed and used with the consent of the railroad commission (public service commission) of Indiana: And provided, further, that this section shall not apply to crossings within cities or incorporated towns.'

"If you find from the evidence that at the time and place of the accident in controversy the defendant railroad violated the above quoted statute, I instruct you that such violation would constitute a presumption that the railroad was negligent. Such a presumption is rebutted if the evi-

dence shows that it did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances, who desired to comply with the law."

Railroad's objection to the court's Final Instruction No. 11 is in words and figures as follows, to-wit:

## "DEFENDANT'S OBJECTION TO COURT'S FINAL INSTRUCTION NO. 11

"We object to Court's Instruction No. 11 for placing before the jury points outside the scope of the issues of this complaint, in that there had been no issue raised in the pleading of this cause to the effect that there should have been the word 'Two' placed upon any cross-buck involved in this, at the scene of this accident. For the further reason that there has been no evidence introducd to the effect that there was more than one railroad, main railroad track, traveling across the road at the point of this accident; and that the part of this Statute referring to installing cross-bucks with the word 'Two' on them does not apply to the facts as they have been foreclosed in this law suit. And for the further reason that the evidence clearly showed the establishment of a cross-buck at the intersection of this railroad crossing and street where the accident occurred, and that as such this issue should not properly be brought before the jury, since the clear evidence is that the railroad had complied with this Statute."

We have determined that the specification of error pertaining to the refusal to give certain instructions and the giving of certain instructions over written objections of the defendant Railroad are so closely related that they may be grouped and treated in the one discussion. Rule AP. 8.3 (A) (7).

Railroad contends it is charged by the second amended complaint with two violations of the statute: (1) Failure to install and maintain a crossbuck; (2) Failure to install and maintain railroad crossing danger signs. Railroad further states that the evidence clearly established that the crossbuck and warning signs north of the tracks were installed at the time of the accident.

Therefore, as to defendant's Tendered Instructions 1 and 2, we have come to the inescapable conclusion that there is a complete lack of proof that there was a failure on the part of the Railroad to have the crossbuck and the warning sign erected and in place as directed to comply with the statute.

There being no evidence that there was a failure to erect the said signs, then defendant's Tendered Instructions 1 and 2 should have been submitted to the jury and the specification of statutory negligence should have been withdrawn from the jury. The court is not permitted to instruct the jury as to its duties which arise pursuant to statutes on which there is no evidence. There is evidence in the record which shows a compliance with the statute.

Plaintiff-appellee contends that the statute requiring certain signal devices was not complied with for the reason that there was no crossbuck at the northwest quadrant of the intersection of Fourth Street and the B & O tracks.

The court's Final Instruction No. 11, hereinabove set out, is a copy of Ind. Ann. Stat. #55-2001 (Burns, 1951 Repl.), with the exception that the following words are deleted from the beginning thereof: "From and after January 1, 1914."

It must be noted that § 55-2001 is in the singular and refers to "*A* substantial upright post"; *a* board of wood or metal to be placed not closer to the ground than seven feet on *this* post, at right angles with *the* post, on which shall appear the word 'Danger.' " (Our emphasis.)

There is, however, an insubstantial non-compliance with the statute, as the sign did not have the word "Two" indicating multiple tracks running parallel to one another. However, this is immaterial to the issues in this case, as the second track was not pleaded in the second amended complaint and there is no evidence whatsoever in the record that would indicate the second track was material to the issues and the jury's verdict and plaintiff's said exhibit 15 shows the car in which plaintiff was riding had run

partially under the tank car and had not gotten to the north rail of the north, or first, track.

In the case of *Killion* v. *Chi., Milw., St. Paul, & Pac. R. R.* (1940), 107 Ind. App. 527, 25 N.E.2d 647, the court said:

> "The complaint alleges that the railroad did not maintain a crossing sign of the cross-arm type required by law 'on that side of the railroad crossing from which this plaintiff approached.' § 14562 Baldwin's 1934, *does not provide that the cross-arm type of crossing sign shall be placed on each side of a simple crossing.* It provides that such a warning sign shall be placed as nearly as possible at right angles with the highway 'at each grade crossing of its railroad with any public highway.' " (Our emphasis.)

The statute having been interpreted that only one crossbuck shall be maintained at a railroad crossing with a public highway and the evidence showing that there was one properly erected and constructed crossbuck at the intersection of Fourth Street and the B & O tracks was adequate, there is no merit in the plaintiff-appellee's argument that there should have been another crossbuck on the side of the crossing from which the car in which she was riding approached.

And, further, in *Killion,* the court, in discussing the warning sign, which it referred to in that case as a circular disk, located about 275 feet from the crossing and was:

> ". . . 'wholly inadequate and ineffective to warn travellers of said crossing at night because it could not be seen at night and that neither the plaintiff nor the driver of the automobile saw the same.' . . ."

further said

> ". . . The disk described was substantially as required by §§ 55-2003 et seq. Burns 1933 as amended by chapter 234, p. 1230, Acts, 1935 . . ."

In *Killion,* the court further said that the circular disk, which we refer to as a warning sign, located 275 feet from the crossing, was substantially as required by statute.

The evidence in the case at bar was that the warning sign was 305 feet rather than 300 feet from the intersection and therefore, such a small discrepancy would not be considered a violation of the statute, and defendant's objections to the court's Final Instructions 9 and 11 were well taken. The presence or absence of a warning sign south of the crossing is immaterial to the issues, as such a sign could not have a causal connection with the accident.

In plaintiff's second amended complaint, under rhetorical paragraphs 9(a) and (b), as we have heretofore pointed out, the defendant is charged with negligently failing to install and maintain at the grade crossing with the public highway, highway crossing *signs* (our emphasis) at right angles with the highway which signs amount to crossbucks.

In the case of *Chesapeake & Ohio Railway Company* v. *Burk* (1961), 241 Ind. 683, 686-688, 172 N.E.2d 670, the court tendered an instruction pertaining to signs, including crossbucks, and to which the defendant objected in that the court was submitting an issue of negligence to the jury which was outside the evidence. This court held:

"There was no evidence in support of appellee's allegation 'that the defendant failed to have a sign, containing the words: "Danger," "Railroad Crossing" "Two" (designating a multiple track), as referred to in item "e" of said instruction. In fact, the undisputed evidence is that such a sign was present. For this reason, the court's instruction 19 was in error because, as stated in appellant's objection, 'the court . . . (was) submitting an issue of negligence to the jury, which is outside of the evidence.' "

The court, in that case, refused to give defendant's tendered instruction number 4, which is as follows:

" 'I now charge you that one of the allegations of plaintiff's complaint is that the defendant was careless and negligent in that it failed to maintain at right angles at such crossing any sign or warning containing the words "DANGER," "RAILROAD CROSSING," "TWO" (designating a multiple track). I now instruct you here is no

evidence from which you can find that the defendant was guilty of negligence by reason of the acts averred in said allegation of said complaint, and as to such charge of negligence you will find for the defendant.' "

The court, in discussing this instruction, stated that the ground of negligence alleged in the complaint was based on plaintiff's specific allegation:

". . . 'That the defendant failed to have a sign, containing the words: Danger, Railroad Crossing; Two (designating a multiple track).' The burden of proving the *absence* of the prescribed sign was upon the appellee. [plaintiff] If there was 'no evidence' in support of the allegation, it was sufficient for the appellant to so state in the argument portion of his brief. . . ."

The court further held that it was the court's duty to assume the appellant's statement of the record was correct and there was no evidence that appellant had failed to maintain a cross-arm sign as alleged in appellee's complaint.

This court held that it was error to refuse said instruction, since the instruction was designed to remove the particular issue from the jury upon which there was a complete failure of proof.

In the case of *New York Central R. Co.* v. *Powell* (1943), 221 Ind. 321, 47 N.E.2d 615, the court said:

" 'It is furthermore fundamental that the instructions of the court to the jury must follow the evidence, and be limited to an exposition of the legal effect upon the issues on trial of the relevant facts before the jury for determination.' [Citing cases.]"

The court further said:

". . . While this judicial function is generally invoked in passing upon the sufficiency of pleadings, it often arises again upon the evidence, and where the evidence most favorable to the plaintiff is insufficient to establish negligence in law, the court should dispose of the matter and not permit the question to go to the jury. [Citing case.] . . . 'it is nevertheless the duty of the

court first to say whether, upon the facts most favorable to the plaintiff, negligence *can* be inferred . . .' "

We are, therefore, of the opinion that the defendant's Tendered Instructions No. 1 and 2 should have been given as requested and that the court's giving Final Instructions 9 and 11 over written objections was also error, all of which was contrary to law.

The court having determined reversible error has been committed makes it unnecessary to write on further specifications of error. The law on this point is so well settled it needs no citation of authority.

Cause reversed and remanded for a new trial.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 290 N.E.2d 742.